**Emanuel Okita OKOCHA, Plaintiff,**

v.

**HSBC BANK USA, N.A.,
et al., Defendants.**

No. 08 Civ. 8650(LAK).

United States District Court,
S.D. New York.

March 25, 2010.

Okechukwu Valentine Nnebe, Nnebe & Nnebe, New York, NY, for Plaintiff.

Meredith Leigh Friedman, HSBC Bank, USA, N.A. Buffalo, NY, Keith Michael Brandofino, Preston Lee Zarlock, Phillips Lytle LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, District Judge.

Plaintiff Emanuel Okocha has brought suit against HSBC Bank USA, N.A. ("HSBC"), HSBC Bank Nevada, N.A. ("HSBC Nevada"), HSBC Card Services, Inc. ("Card"), and HSBC Card Services (II), Inc. ("Card II"), for their respective roles in plaintiff's ongoing dispute with them regarding the status of his bank accounts. At the heart of this dispute is a disagreement going back more than ten years as to whether plaintiff ever used an overdraft account, thereby incurring debt to the defendants.

Plaintiff opened a deposit account (the "Deposit Account") with the First Federal Savings and Loan Association of Rochester ("First Federal") in 1993. The terms of the Deposit Account agreement explicitly made it subject to the Rules Governing Association Accounts (the "Account Rules") and to any subsequent amendments to those rules.

In 1996, plaintiff applied for and received a FirstRate Credit line overdraft account (the "Line Account") with First Federal. The approval letter and the original account agreement both state that "first use" of the account—that is, the first instance of plaintiff's overdrawing on his deposit account—would indicate acceptance of the terms of the agreement. Plaintiff's troubles appear to have started

when First Federal merged with Marine Midland Bank, N.A. ("Marine Midland") in 1997. Soon after the merger, plaintiff received account statements indicating that he owed the bank money for having used his Line Account. Plaintiff contends that he never used the Line Account—and thus never agreed to its terms—and that he immediately informed the bank of its mistake and contested the account statement.

Ten years of frustration ensued. Marine Midland and its successor HSBC continuously have insisted that plaintiff owes money for his alleged use of the Line Account in 1997. They periodically have debited plaintiff's Deposit Account to pay this supposed debt and have reported the Line Account as delinquent to credit reporting agencies ("CRAs"). Plaintiff claims that he consistently has disputed all of these actions, repeatedly requested the bank to provide any proof of his having used the Line Account, disputed their debiting of his Deposit Account, and registered complaints with various CRAs regarding the credit information that HSBC has provided to them.

Notwithstanding this dispute's long history, plaintiff did not file the present action until October 9, 2008. The complaint alleges a variety of state and federal claims against the four defendants. The matter now is before the Court on two motions by the defendants. They seek (1) summary judgment dismissing the action in its entirety [DI 13], and (2) to strike inadmissible evidence that they claim is material to the summary judgment motion [DI 52]. The Court assumes familiarity with the facts and all documents filed by the parties in this case. For the reasons set forth below, the Court denies the de-

fendants' motion to strike and grants in part and denies in part the defendants' motion for summary judgment.

## I. Defendants' Motion for Summary Judgment

The complaint contains five federal and fourteen state-law claims.[1] In his answering brief, however, plaintiff concedes that claims six, seven, and eight should be dismissed because they do not apply to furnishers of information.[2] The claims are dismissed accordingly and need not be discussed further.

The defendants raise three initial matters, arguing that (1) plaintiff has no claim against defendants HSBC Nevada, Card, and Card II, (2) plaintiff's claims are barred under the account agreements, and (3) plaintiff's failure to dispute the monthly account statements created an account stated that requires dismissal of the complaint. All three arguments fail.

First, HSBC Nevada, Card, and Card II are correct that the their status as co-subsidiaries of the same parent company does not in itself subject them to joint and several liability. Each, however, is still potentially liable for its own role in the alleged misconduct. Defendants do not address this in their motion and therefore have failed to establish that there is no material issue of fact as to each or any defendant's role in the alleged wrongful conduct.

Second, plaintiff's claims are not barred by the account agreements. By signing an account opening document that incorporated the Account Rules and their subsequent amendments[3] and by continuing to use that account to the present day, plaintiff is bound by the terms of that Deposit Ac-

---

1. The parties previously stipulated [DI 11] that plaintiff's nineteenth claim was dismissed with prejudice.

2. *See* Pl. Br. 14.

3. Baffuto Dec. Ex. A.

count agreement with respect to those claims that relate to the allegedly unauthorized debiting of the Deposit Account. The Deposit Account agreement, however, does not bind him with respect to claims based on HSBC's furnishing of information to CRAs regarding plaintiff's alleged delinquency on the Line Account. The Court cannot say as a matter of law that plaintiff is bound by the Line Account agreement because there is a material question of fact as to whether plaintiff ever used that account and thus as to whether he ever agreed to its terms.[4] As a result, certain of plaintiff's claims—those regarding his Deposit Account—are subject to the shorter statute of limitations and notification requirements contained in the Account Rules, but this does not in itself require dismissal of any claims.

Third, there are material issues of fact as to whether an account stated was created. If, as plaintiff claims in his declaration, he has been disputing the offsets on his Deposit Account (and the balance on the Line Account) since 1997, or even for a far shorter time, then an account stated was not created.

*Federal Claims*

Plaintiff has brought five federal claims under the Electronic Funds Transfer Act ("EFTA"), the Truth in Lending Act ("TILA"), and the Fair Credit Reporting Act ("FCRA"). Putting aside for a moment the sufficiency of these claims, each statute provides a limitations period that limits plaintiff's claims. The statute of limitations for both the EFTA and TILA is one year, while the limitations period for FCRA is two years.

To the extent that the defendant moves to dismiss these claims on statute of limitations grounds, the motion is granted to the extent that all claims for relief based on alleged violations prior to October 9, 2007 under the EFTA and TILA and prior to October 9, 2006 under FCRA are time-barred and dismissed.

*Claim 1: EFTA, 15 U.S.C. § 1693*

■ Claim 1 alleges that the defendants have been debiting plaintiff's Deposit Account without his authorization in violation of the EFTA. Plaintiff's claim is subject to the one-year statute of limitations and the terms of the Deposit Account agreement, which required notification to the bank of any dispute within fourteen days of the bank's sending the account statement. There was at least one offset, on August 1, 2008,[5] within the one-year limitations period with respect to which defendant has submitted evidence of having sent the bank written notice within fourteen days.[6] As a result, there remain material issues of fact as to this claim, particularly with respect to whether the bank was authorized to debit plaintiff's account and whether and when plaintiff disputed these debits.

*Claim 2: TILA, 15 U.S.C. §§ 1632, 1666*

The claim survives, subject to TILA's one-year statute of limitations. The Line Account is an open end consumer credit plan[7] of the type that subjects the creditor to disclosure obligations under Section 1632, as well as Section 1637 (which plaintiff does not allege) and Section 1666 (which plaintiff raised only in his response brief).[8] Section 1638 does not apply on its

4. Def. Ex. 6; Falbo Decl. Ex. B.

5. *See* Def.'s Schiavone Decl. Ex. A at H00673.

6. *See* Pl. Ex. 8.

7. 12 C.F.R. § 226.2(a)(20).

8. *See Rothenberg v. Chemical Bank New York Trust Co.,* 400 F.Supp. 1299, 1302 (S.D.N.Y. 1975).

face because this is an open end consumer credit plan.

■ The only specific failure to disclose that plaintiff identifies is that defendants allegedly repeatedly have misrepresented the amount of over-limit and late-payment fees that plaintiff would be charged for use of the Line Account.[9] Defendants have not disputed this representation and have not shown the absence of a material fact with respect to this claim such that dismissal is appropriate.

*Claims 3 and 4: FCRA, 15 U.S.C. §§ 1681e(b), 1681i(a)*

Neither Section 1681e(b) nor Section 1681i(a) provides a private right of action to plaintiff. As a result, these claims are dismissed.

*Claim 5: FCRA, 15 U.S.C. § 1681s–2*

This claim survives, subject to FCRA's two-year statute of limitations. Section 1681s–2(b) provides a private right of action with respect to duties imposed on a furnisher of information to CRAs ("Furnisher") once the Furnisher has received notice of a consumer's dispute. The first such duty is that the Furnisher "conduct an investigation with respect to the disputed information." [10]

The Second Circuit has not interpreted this requirement, but other circuits and district courts have construed the phrase as assuming a reasonableness standard for judging the adequacy of the required investigation.[11] There remain material issues of fact as to whether the defendants undertook reasonable (or any) investigations with respect to complaints plaintiff made to CRAs at different times.

Injunctive and declaratory relief, however, are not available under Section 1681.[12] Accordingly, plaintiff's fifth claim survives but injunctive relief is unavailable.

*State Claims*

Only one of plaintiff's fourteen state-law claims—claim fifteen—survives defendants' motion to dismiss.

As an initial matter, defendants argue that all of plaintiff's state-law claims based on defendants' credit reporting activities are preempted by FCRA and must be dismissed. This appears to be true under 15 U.S.C. § 1681t. Two provisions in FCRA explicitly preempt state law. Section 1681t(b)(1)(F) preempts state law regarding all subject matters covered by Section 1681s–2 relating to the responsibilities of Furnishers. Section 1681h(e), enacted earlier in time, explicitly preempts certain suits also, stating that

---

9. Pl. Resp. Br. 7; Okocha Decl. ¶ 12. Plaintiff backs up this assertion with reference to Def. Exs. C, at H0006, and F.

10. 15 U.S.C. § 1681s–2(b)(1)(A).

11. *See, e.g., Johnson v. MBNA America Bank, NA,* 357 F.3d 426, 429–31 (4th Cir.2004); *id.* at 430 n. 2 (listing district court cases along these lines); *Burns v. Bank of America,* 655 F.Supp.2d 240, 250 (S.D.N.Y.2008) ("There is no showing that [defendant] either failed to investigate Plaintiff's disputed information or that [defendant's] investigations were unreasonable as a matter of law."); *Amendoeira v. Monogram Credit Card Bank of Georgia,* 2007 WL 2325080, *1 (E.D.N.Y.2007) ("While the

FCRA does not state with specificity the type of investigation required, courts have required a 'reasonable investigation' to determine whether disputed information can be verified.") (citations omitted).

12. *See White v. First American Registry, Inc.,* 378 F.Supp.2d 419, 424 (S.D.N.Y.2005) (denying injunctive relief because "the absence of any express provision for injunctive relief in Sections 1681n and 1681o, coupled with the express authorization of such relief on behalf of federal and state agencies, leads to the unmistakable conclusion that Congress intended to limit injunctive relief to those instances in which it expressly authorized it").

"no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer."

Courts are split on how to reconcile these two provisions, and the Second Circuit has not yet taken a side.[13] The statutory approach (arguing that only state statutes, not common law, are preempted) appears too narrow.

Other courts have found that Section 1681t preempts Section 1681h.[14] This approach effectively provides Furnishers with complete immunity from state-law claims. Another approach would achieve a similar end, but would do so by finding that the two provisions do not overlap at all. On this reading, Sections 1681h and 1681t govern different subject matters because the "information disclosed pursuant to section 1681g, 1681h, or 1681m," which determines the scope of Section 1681h's reach, does not involve any Furnisher obligations. As a result, Section 1681h controls only CRAs and those who take adverse actions against consumers, and it does not control Furnishers.[15] The temporal approach construes Section 1681t as preempting state law with respect to Furnisher conduct only after the Furnisher has received notice of the dispute, but it potentially allows for state-law liability based on conduct prior to that point in time so long as it is not preempted under Section 1681h.

■ This Court recognizes that, at a minimum and pursuant to the plain language of the statute, Section 1681t preempts state law with respect to Furnisher conduct governed by Section 1681s–2. However, for purposes of this motion it does not matter whether that preemption is "complete," and the Court declines to decide the issue.

*Claim 9: GBL § 349, Unfair and Deceptive Business Practices*

■ GBL § 349 has a three year statute of limitations, and the cause of action accrues when the plaintiff first suffers injury as a result of the deceptive act or practice. To state a claim for deceptive business practices under this statute, plaintiff must allege that the act or practice is consumer-oriented, misleading in a material way, and that the plaintiff suffered as a result of the deceptive act.

■ Plaintiff alleges that defendants violated Section 349 by (1) failing to maintain and follow reasonable procedures to ensure the accuracy of the information they reported, (2) failing to delete inaccurate information after notification, (3) failing to conduct proper investigations, and (4) reporting to third parties information affecting the plaintiff's reputation for credit worthiness, with knowledge or reason to know that such information was false.

---

**13.** *See Prakash v. Homecomings Financial,* 2006 WL 2570900, \*5 (E.D.N.Y.2006) (examining several interpretations and adopting "temporal approach").

**14.** *See, e.g., Roybal v. Equifax,* 405 F.Supp.2d 1177, 1180–82 (E.D.Cal.2005).

**15.** *See, e.g., Holtman v. Citifinancial Mortg. Co.,* 2006 WL 1699589 (D.Conn.2006).

All of these allegations appear to fall squarely within the subject matter of Section 1681s–2 (duties of Furnishers) and therefore are preempted by Section 1681t(b)(1)(F). Even were that not the case, they appear not to be "deceptive" in the required manner.

*Claim 10: GBL § 349*

This claim is premised on the defendants allegedly having made false statements regarding the character, amount, and status of the purported debt. It too falls squarely within the preemptive scope of Section 1681t with respect to statements made to CRAs, and the plaintiff has not clearly alleged deceptive statements to other third parties (or himself) that caused cognizable harm.

*Claim 11: Unjust Enrichment*

■■■ At base, plaintiff's claim for the unauthorized debiting of his account sounds in contract, not tort, and he has not stated a breach of contract claim. Quasi-contract claims are permitted only where there is not a controlling express agreement.

The Marine Midland deposit agreement, which plaintiff admits to having received after the bank merger in 1997, includes a provision stating that "[i]f you owe the bank money" the bank may "use the money in your account to pay the debt, even if withdrawing the money causes an interest penalty."[16] Notwithstanding the fact that plaintiff disputes ever owing the bank money for use of the overdraft account, the Marine Midland deposit agreement clearly governs plaintiff's rights in this respect. It is the contract with the bank that gives (or does not give, in the specific circumstances) the plaintiff the right to demand back money he deposited with the bank. As a result, he cannot succeed on a quasi-contract claim.

*Claim 12; Emotional Distress*

While plaintiff may be able to recover compensatory damages for emotional distress under his federal claims (and his testimony alone could support this), he has not stated a legally sufficient state-law claim.

■■■ Intentional infliction of emotional distress under New York law requires "extreme and outrageous" conduct by the defendants, which the allegations do not support. Negligent infliction of emotional distress requires that the emotional distress stem from either (1) physical injury or the threat of physical injury, or (2) breach of a special duty between plaintiff and defendant. Plaintiff has alleged neither.

*Claim 13: Defamation and Invasion of Privacy*

■■■ New York does not recognize a common law "false light" invasion of privacy tort. As for plaintiff's defamation claim, it appears squarely preempted by Section 1681t because any defamatory conduct falling within the one-year statute of limitations—namely, defendants' reporting to credit agencies—would have occurred after defendants received notice that plaintiff was disputing the accuracy of the account. This brings it within the scope of Section 1681s–2's regulation on either a temporal or complete preemption theory.

*Claim 14: Slander*

Plaintiff has not alleged any spoken defamatory statements.

*Claim 15: Negligence*

Plaintiff claims that defendants breached "a common law duty to exercise due care in monitoring and supervising the

---

**16.** Falbo Decl. Ex D, at H01352.

activities of each other, [their] agents, officers and employees and legal representatives." [17] Plaintiff seems to have two potential bases for this negligence claim: (1) negligence with respect to allowing or facilitating the alleged original mistake respecting use of the Line Account, and (2) negligence with respect to the defendants' system of investigating the subsequent dispute.

Any claim with respect to the former clearly is time-barred since the alleged initial mistake occurred in 1997.

 Any claim with respect to the latter that is based on the defendants' system of investigation for purposes of reporting to CRAs is clearly preempted by Section 1681t. However, to the extent that plaintiff's claim addresses defendants' general internal systems of review regarding account disputes—separate from investigations related to its role as a Furnisher—it survives subject to the applicable statutes of limitation. The general limitations period for negligence claims in New York is three years. To the extent that the claim attacks defendants' systems for handling disputes with respect to deposit accounts, it is further limited by the Account Rules—that is, the shorter statute of limitations and the fourteen-day notice requirement. To the extent that the claim attacks defendants' systems for handling disputes with respect to overdraft accounts, however, it remains subject to the longer three-year limitations period.

Plaintiff claims negligence also with respect to the defendants' "collection activities" but does so only in the vaguest terms and does not present any support for this aspect of the claim.[18]

### Claim 16: Fraud

Plaintiff has not alleged any reliance by plaintiff on defendants' allegedly false statements in the last six years. The only reliance plaintiff specifically alleges was on the original Line Agreement, which stated that first use of the account would constitute agreement to its terms. This statement and any reliance on it that resulted in injury occurred in 1997 and the limitations period has long since run.

### Claim 17: Conversion

 New York courts consistently have held that funds in a checking account cannot be "converted" by the bank in which the money is deposited because the funds are insufficiently "specific and identifiable property." [19] Plaintiff cannot maintain a conversion claim against HSBC for allegedly debiting his Deposit Account without authorization.

### Claim 18: Civil Conspiracy

 Civil conspiracy claims under New York law are permitted only to connect the actions of separate defendants with an actionable tort. Absent evidence of an actionable underlying tort, the conspiracy claim must be dismissed.

Plaintiff claims civil conspiracy with respect to alleged violations of 15 U.S.C. § 1692 and GBL § 349. The GBL § 349 claim has been dismissed and so there is no state-law basis for the conspiracy claim. Moreover, plaintiff has not alleged facts, or

---

17. Compl. ¶ 100.

18. *See* Compl. ¶ 98.

19. *See, e.g., United Systems Associates v. Norstar Bank Upstate New York,* 171 A.D.2d 922, 923, 566 N.Y.S.2d 793 (3d Dep't 1991); *Miller v. Wells Fargo Bank Intern. Corp.,* 540 F.2d 548, 560 (2d Cir.1976) ("Money deposited in a general account at a bank does not remain the property of the depositor. Upon deposit of funds at a bank, the money deposited becomes the property of the depositary bank; the property of the depositor is the indebtedness of the bank to it, a mere chose in action.").

adduced evidence, supporting any of the elements of civil conspiracy (particularly an agreement or overt acts).

*Claim 20: Malicious Prosecution and Abuse of Process*

■ The plaintiff concedes that he is not entitled to relief on the malicious prosecution claim.[20] The abuse of process claim fails also. It is barred by the one-year statute of limitations, which began to run when the civil suit was filed against plaintiff, no later than February 2007. Even were this claim not time-barred, plaintiff fails specifically to allege or show that any defendant was pursuing the civil suit in a "perverted manner" or for a "collateral objective."

## II. Defendants' Motion to Strike

Defendants move also to strike three sets of documents submitted by the plaintiff in opposition to the defendants' motion for summary judgment.

Only the second set—portions of plaintiff's declaration and Opposition to the Defendants' Statement of Undisputed Facts, which defendants claim contradict plaintiff's prior sworn deposition testimony—is material to the defendants' summary judgment motion. Specifically, defendants object to what they characterize as (1) plaintiff's denial of annually having received revised Account Rules, (2) plaintiff's claims that he actually applied for credit, and (3) plaintiff's claims that he received medical treatment. The Court finds that the indicated statements do not contradict plaintiff's prior sworn testimony.

The content of the first and third sets of documents is not material to disposition of the defendants' summary judgment motion.

*Conclusion*

For the foregoing reasons, the defendants' motion for summary judgment dismissing the complaint [DI 13] is granted to the extent that the following are dismissed: (1) claims three, four, six through fourteen, sixteen through eighteen, and twenty, (2) so much of claims one and two as seek recovery for conduct that occurred before October 9, 2007, (3) so much of claim five as seeks recovery for conduct that occurred before October 9, 2006, (4) so much of claim fifteen as relates to the Deposit Account and seeks recovery for conduct that occurred before October 9, 2007, and (5) so much of claim fifteen as relates to the Line Account and seeks recovery for conduct that occurred before October 9, 2005. The motion is denied in all other respects. Defendants' motion to strike [DI 52] is denied.

SO ORDERED.