David Martin **HABER**, Plaintiff,

v.

**ASN 50TH ST. LLC, et al.**, Defendant.

No. 10 Civ. 3536(VM).

United States District Court, S.D. New York.

March 7, 2012.

Craig Robert Benson, Alex Ali Ayazi, Littler Mendelson, P.C., New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se plaintiff David Martin Haber ("Haber"), a tenant of 250 West 50th Street, New York, New York (the "Building") brought this action against his landlord ASN 50th Street LLC ("ASN"), and ASN employees Linda Early ("Early") and Mark Haller ("Haller") (collectively, "Defendants"), alleging that Defendants discriminated against him on the basis of his race. Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons below, Defendants' motion is GRANTED.

David Martin Haber, New York, NY, pro se.

## I. BACKGROUND [1]

1. The factual summary herein and facts discussed throughout this opinion are derived from the following documents and any exhibits attached thereto: Declaration of Defendant Mark Haller ("Haller Dec."), filed Apr. 29, 2011 (Docket No. 64); Declaration of A. Ali Ayazi in Support of Defendant's Motion for Summary Judgment ("Ayazi Dec."), filed Apr. 29, 2011 (Docket No. 65); Defendants' Local Rule 56.1 Statement of Undisputed Facts, filed Apr. 29, 2011 (Docket No. 66); Plaintiff's Affidavit in Support of Opposition to Defendant's Motion for Summary Judgment ("Pl. Aff."), filed May 27, 2011 (Docket No. 71); Supplemental Declaration of A. Ali Ayazi in Support of Defendants' Motion for Summary Judgment, filed June 14, 2011 (Docket No. 74); Opposition to Supplemental Declaration of A. Ali Ayazi in Support of Defendant's Motion for Summary Judgment, filed June 20, 2011 (Docket No. 78). Except where specifically referenced, no further citation to these sources will be made.

Although Haber filed a Local Rule 56.1 Statement of Undisputed Facts, he denies in one conclusory sentence every factual assertion made in Defendants' Local Rule 56.1 Statement, except for his address and his receipt of a rental stipend. Haber's Rule 56.1 Statement also lacks citations to any admissible evidence and fails to number his paragraphs correspondingly. In short, Haber's Rule 56.1 Statement fails to adhere to the requirements of Local Rule 56.1. *See* Local Civil Rule 56.1(b). Normally, failure to comply with Local Rule 56.1 permits a reviewing court to consider the facts undisputed for purposes of the motion. *See* Fed.R.Civ.P. 56(e)(2); Local Civil Rule 56.1(c). However, district courts have "broad discretion" to overlook a party's failure to comply with local court rules. *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001). Given Haber's status as a pro se litigant, the Court exercises that broad discretion and conducts an "assiduous review of the record" to determine whether there is any evidentiary basis for his assertions and to determine any other material issues of fact. *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000). *See also Geldzahler v. New York Medical College,* 746 F.Supp.2d 618, 620 n. 1 (S.D.N.Y.2010) (reviewing record for evidentiary support for factual assertions in Local Rule 56.1 Statement of pro se litigant and to determine any other material issues of fact, even though pro se litigant failed to cite to evidence).

▪ The Building is a rent-stabilized apartment complex formerly owned by Resnick Eighth Avenue Associates, LLC ("Resnick"). On November 6, 1998, Haber, an African American, signed a lease agreement (the "Lease") with Resnick to become a tenant of the Building. On January 4, 2006, ASN purchased the Building from Resnick and became Haber's new landlord. Haber has renewed the Lease every two years since the initial agreement, including renewals every year with ASN.

The Building participates in an initiative known as the 80/20 Program, sponsored by the New York State Housing Finance Agency, the New York City Housing Development Corporation, and the New York City Department of Housing Preservation and Development. The 80/20 Program provides affordable housing options for low-income tenants in generally desirable residential areas. Any apartment building in the 80/20 Program must reserve 20% of its units for "low-income residents." Low-income residents are defined as those earning no more than 50% of area median income in the relevant geographical area. Buildings in the 80/20 Program must charge rent to these low-income residents at a specified affordable rate.

Haber is a low-income resident who pays a reduced rent under the 80/20 Program. The United States Department of Veterans Affairs further subsidizes 70% of Haber's rent in the form of Section 8 vouchers, distributed by New York State Division of Housing and Community Renewal ("DHCR") directly to ASN. Haber is responsible, each month, to pay the remainder of his rent to ASN.

Under the terms of the Lease, rent must be paid in advance by the beginning of each month. If a tenant defaults on his rent payment. New York state law allows his landlord to file "Petitions of Non–Payment" in New York State Housing Court ("Housing Court") to repossess property held by that tenant. N.Y. Real. Prop. Acts. Law § 711(2). However, the landlord must first either make a personal demand for rent, or serve a written "Rent Demand" giving the tenant at least three days to satisfy his or her rent obligations. Id. The Rent Demand and the Petition of Non–Payment (with its attendant notice) should be personally served on the tenant. Id. at § 735(1). However, the landlord may have copies affixed upon a "conspicuous part of the property sought to be recovered . . . if the process server cannot obtain admittance and find a person to receive the process." Id. ASN's policy is to send an informal letter, on the fifth day of each month, to delinquent tenants informing them that they are in arrears, and as a consequence will be assessed a late fee. If, by the tenth day, the tenant is still in arrears for more than $2000, or has a "history of failing to pay rent," ASN's outside counsel will serve a Rent Demand and eventually file a Petition of Non–Payment. (Haller Dec. ¶ 21–24.)

From 2007 to 2010, ASN and Haber fought a series of legal battles arising from Haber's repeated failure to pay his rent. The first dispute arose after Haber failed to pay his portion of the rent from May 2007 through January 2008. On November 19, 2007, after unsuccessfully attempting to personally serve Haber, ASN had a Rent Demand affixed on Haber's door. On November 27, 2007 Haber filed a civil action in New York State Supreme Court against ASN alleging that ASN fraudulently claimed to DCHR that he owed ASN $1,904 in back rent, and that ASN was using the Building as a hotel in violation of its certificate of occupancy. On January 7, 2008, ASN filed a Petition of Non–Payment with the Housing Court. However, by March 20, 2008, Haber and ASN reached a stipulation of settlement, in

which Haber agreed to pay $831 by April 20, 2008.

The second dispute arose after Haber failed to pay his portion of the rent from April 2008 through December 2008. On October 31, 2008, after a failed attempt to personally serve Haber four days earlier, ASN again had a Rent Demand affixed to Haber's door. On December 8, 2008, after failing to receive any payment from Haber, ASN filed a Petition of Non–Payment at Housing Court. In response, Haber filed a counterclaim alleging "harassment and violation of certificate of occupancy." (Ayazi Dec. Ex. S.) However, by March 20, 2008, Haber and ASN reached another stipulation of settlement, where Haber promised to pay ASN $2,616.01 in back rent by March 2, 2009.

The third dispute arose out of Haber's failure to pay his portion of the rent beginning in February 2010. Haber started to withhold his rent at that time because he was unhappy with ASN's billing practices—specifically, he believed ASN was not getting his "bills straight." (See Ayazi Dec. Ex. A at 66.) On February 23, 2010, ASN sent an email to Haber informing him that he was delinquent on his February rent payment. Haber replied that the statement was incorrect because he had already paid rent, and that he would "put a stop on [ASN] electronically-drawing funds" from his bank account. (See Ayazi Dec. Ex. U; Pl. Aff. Ex. C.) On March 22, 2010, ASN had Haber personally served with a Rent Demand, signed by Haller, warning Haber that he had until March 29, 2010 to pay ASN $968.38 in back rent and other fees for February and March 2010. On April 13, 2010, after failing to receive any payments from Haber, ASN filed another Petition of Non–Payment (the "2010

Petition") in Housing Court, alleging that Haber owed $1,285.05.

On April 18, 2010, Haber filed the instant complaint in this Court against ASN, Early, and Haller. On or about August 2010, ASN allowed a contractor to put casing around the walls in Haber's apartment. However, Haber never gave ASN or the contractor permission to enter his apartment, so on October 15, 2010, he filed an amended complaint, which added allegations related to the contractor's trespass.

The amended complaint alleges that Defendants [2] committed racially-motivated harassment, beginning on March 10, 2009, by filing a frivolous Petition of Nonpayment in 2010 and by allowing the contractor to enter Haber's apartment without Haber's consent. The complaint also alleges that Defendants Haller and Early conspired with ASN to "trump up charges" that Haber failed to pay his rent, affix Rent Demands on his door, "falsif[y] documents [and] statements to try and evict" him, and file a "false claim" in Housing Court, all on account of Haber's race. (See Amended Complaint, filed October 15, 2010 (Docket No. 16), at 6 ("Am.Compl."))

## II. DISCUSSION

### A. STANDARD OF REVIEW

To prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden to demonstrate that there is no genuine issue of material fact. F.D.I.C. v. Great Am. Ins. Co., 607 F.3d

---

2. Haber also attempted to join Lehman Brothers Holdings, Inc., Bank of America, N.A., and Barclays, PLC as additional defendants. However, this Court dismissed his claims against these defendants for lack of specific factual allegations connecting them to the events in question. (See Decision and Order, filed Jan. 7, 2011 (Docket No. 32).)

288, 292 (2d Cir.2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When the moving party has met this initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial, and cannot rest on mere allegations or denials of the facts asserted by the movant. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir.2002) (citations omitted). The Court must "view the evidence in the light most favorable to the non-moving party, and may grant summary judgment only when no reasonable trier of fact could find in favor of the non-moving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (citation omitted).

■ Under Second Circuit case law, "the salutary purposes of summary judgement—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Gaffney v. Dep't of Info. Tech. and Telecomm.*, 536 F.Supp.2d 445, 455 (S.D.N.Y.2008) (*quoting Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988)).

■ In addition, the Court is mindful that where, as here, a party appears pro se, courts are required to broadly construe pro se pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). The submissions of pro se litigants are to be liberally construed. *See, e.g., Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). However, that Haber is "proceeding pro se does not otherwise relieve [him] from the usual re-

quirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, No. 00 Civ. 8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003).

## B. *CAUSES OF ACTION*

Haber's complaint pleads only "racial discrimination" and conspiracy as the bases for this Court's jurisdiction; the complaint does not identify any specific statutes or case law upon which he makes his claims. (*See* Am. Compl. at 2.) Because Haber is a pro se plaintiff, the Court liberally construes his pleadings as an intention to proceed under the Fair Housing Act (the "FHA"), 42 U.S.C. §§ 3601–3619, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–82, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8–107. The Court also construes Haber's complaint to allege a New York state claim of civil conspiracy against defendants Haller and Early.

## C. *HOUSING DISCRIMINATION CLAIMS*

### 1. *The Fair Housing Act*

#### a. *Legal Standard*

The FHA, enacted as Title VIII of the Civil Rights Act of 1968, imposes liability on private actors who discriminate against protected class members in the real estate market. Because of the types of discriminatory harassment Haber alleges, the Court interprets his complaint as pleading disparate treatment in violation of §§ 3604(a), 3604(b), and 3617 of the FHA.[3]

---

**3.** It is unclear to what extent the FHA prohibits "post-acquisition" discrimination—that is, discrimination that occurs after a putative plaintiff acquires housing. District courts in this Circuit have held that § 3617 prohibits certain types of post-acquisition discrimination. *See, e.g., Ohana v. 180 Prospect Place Realty Corp.*, 996 F.Supp. 238, 239 (E.D.N.Y.

1996) (holding that FHA not only "protects individuals from discrimination in the acquisition of their residences because of race, color, religion, sex, familial status, or national origin, but also protects them," through § 3617, "from interference by their neighbors for such discriminatory reasons in the peaceful enjoyment of their homes"); *Puglisi v.*

Section 3604 prohibits private actors in the housing market from engaging in certain discriminatory actions regarding those who seek housing. Specifically, § 3604(a) makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race." 42 U.S.C. § 3604(a). Section 3604(b) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race." *Id.* at § 3604(b). Furthermore, § 3617 of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or en-joyed ... any right granted or protected by" 42 U.S.C. §§ 3603, 3604, 3605, or 3606. *Id.* at § 3617.

■ FHA disparate treatment claims are analyzed under the *McDonnell Douglas* burden-shifting framework used to evaluate Title VII employment discrimination claims. *See Mitchell v. Shane,* 350 F.3d 39, 47 (2d Cir.2003) (*citing Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1038 (2d Cir.1979)). First, the plaintiff must establish a prima facie case of discrimination. *Id.* (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Then, the burden shifts to the defendants to produce a legitimate, non-discriminatory reason for their actions. *Id.* If the defendants make such a showing, the burden shifts back to the plaintiff to demonstrate

---

*Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 696 (S.D.N.Y.1996) (holding that nonminority landlord accusing neighborhood association of attempting to force him to evict his minority tenants had standing to sue under § 3617). However, the Second Circuit has yet to rule on whether §§ 3604(a) and (b) also prohibit post-acquisition harassment, as the only substantive opinion touching upon this issue merely assumed for the purposes of argument, without actually holding, that a post-acquisition harassment claim could be made. *See Khalil v. Farash Corp.,* 277 Fed.Appx. 81, 84 (2d Cir.2008) ("[a]ssuming, without deciding, that a plaintiff may state an FHA claim of discrimination against families with children based on a hostile housing environment theory"). Furthermore, the circuits are currently split as to whether §§ 3604(a) and 3604(b) cover post-acquisition conduct. *Compare, e.g., Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n,* 388 F.3d 327, 328–29 (7th Cir.2004) (holding that § 3604(b) only prohibits conduct preventing others from acquiring property), *and Lawrence v. Courtyards at Deerwood Ass'n,* 318 F.Supp.2d 1133, 1143 (S.D.Fla.2004) ("[S]ections 3604(a) and (b) are limited to conduct that directly impacts the accessibility to housing because of a protected classification") *with, e.g., The Comm. Concerning Cmty., Improvement v. City of Modesto,* 583 F.3d 690, 713 (9th Cir.2009) (hold-ing that § 3604(b) and the rest of the FHA "reach[] post-acquisition discrimination"), *Bloch v. Frischholz,* 587 F.3d 771, 776 (7th Cir.2009) (holding that § 3604(a) "may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction"), *and United States v. Koch,* 352 F.Supp.2d 970, 976 (D.Neb.2004) (holding that because "the privileges of sale or rental might conceivably be thought to include the privilege of inhabiting the premises," § 3604 and the rest of the FHA "should be (and has been) read to permit the enjoyment of this privilege without discriminatory harassment") (internal quotations and citations omitted).

This Court need not determine the extent to which §§ 3604(a) and (b) prohibit post-acquisition harassment, for two reasons. First, Defendants do not contend that the FHA prohibits only pre-acquisition discrimination. (*See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment, filed Apr. 29, 2011 (Docket No. 67), at 11.) Second, even assuming that §§ 3604 and 3617 protect Haber from the post-acquisition discrimination he alleges, his claims cannot survive summary judgment because he cannot establish a prima facie case of discrimination. *See* Part II.C.1.b, *infra.*

that defendants' proffered reason is pretextual, and that discrimination was the real reason for the defendants' actions. *Id.* (*citing Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000)).

### b. *Haber's Discriminatory Harassment Claims*

Haber's FHA claims of discriminatory treatment fail because Haber cannot make a prima facie case of discrimination. And even if he could, he cannot rebut as pretextual Defendants' proffered non-discriminatory reason for their actions.

Because §§ 3604 and 3617 prohibit a wide range of conduct, courts in this Circuit have articulated the elements of a prima facie showing in differing ways depending on the conduct at issue. *See, e.g., Mitchell,* 350 F.3d 39 at 47; *Reyes v. Fairfield Props.,* 661 F.Supp.2d 249, 266 n. 8 (E.D.N.Y.2009); *Wentworth v. Hedson,* 493 F.Supp.2d 559, 565 (E.D.N.Y.2007). But regardless of how the prima facie standard is articulated, the plaintiff is required to show that defendants' action against him arose from a discriminatory motive. In this case, Haber cannot present facts that could be reasonably viewed to demonstrate that any of Defendants' actions arose out of such a motive. Therefore, Defendants are entitled to summary judgment as to Haber's FHA claims.

The Court will now examine each allegedly discriminatory action.

### i. *The 2010 Petition*

■ Haber cannot make a prima facie of discrimination with regard to Defendants' 2010 Petition because there is no evidence suggesting that Defendants filed the Petition on the basis of Haber's race. Haber offers only his own conclusory assertions that Defendants acted for racially motivated reasons. For instance, when Haber was asked in his deposition why he thought ASN and Haller were discriminat-

ing against him because of his race, Haber replied that he could tell only from their "whole attitude" and that people "wouldn't do this" unless they were racially motivated. (Ayazi Dec. Ex. B. at 54–55.) However, conclusory allegations of this nature alone cannot support a prima facie case of housing discrimination. *Puglisi,* 947 F.Supp. at 706–07 (granting summary judgment dismissing § 3617 claim because claim was grounded only on "conclusory allegations" with no supporting evidence). Simply put, there are no specific facts in the record from which a rational finder of fact could support a reasonable inference that Defendants were racially motivated,

■ Haber testified at his deposition that Defendants made racially discriminatory comments. At the same time, Haber admitted that he had no personal knowledge of such comments and that no racially-motivated comments were ever made "to [his] face." (Ayazi Dec. Ex. A. at 57) Instead, Haber asserted that racist comments "were made to someone who does not want to be involved." (*Id.*) This statement is insufficient to support a prima facie case for two reasons. First, Haber's testimony to this fact is inadmissible hearsay. *See* Fed.R.Civ.P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *W.T. & K.T. ex rel. J.T. v. Board of Educ.,* 716 F.Supp.2d 270, 284 (S.D.N.Y.2010) (finding statements in summary judgment affidavit were "based on inadmissible hearsay or amount to conclusory legal arguments [that] cannot be considered by the Court"). Second, Haber provides no testimony of any kind by the unnamed witness, on which to substantiate the claim.

■ Even if there were evidence on record to support a prima facie case that Defendants brought the 2010 Petition

against Haber for racially motivated reasons, the need to collect delinquent rent provides Defendants with a legitimate, non-discriminatory justification for doing so. ASN put forward financial records showing that Haber made inadequate rent payments after his second dispute with ASN settled in 2008. Haber himself, in his deposition, admitted to a history of failing to pay rent and to withholding rent in 2010. Landlords are permitted to serve Rent Demands and initiate Petitions of Non–Payment against tenants who fail to pay rent. *See* N.Y. Real. Prop. Acts. Law § 711(2); § 735(1). Furthermore, the Lease makes it clear that ASN is entitled to make Rent Demands and seek legal redress if Haber fails to pay his rent. Therefore, ASN was legally justified in pursuing the 2010 Petition in order to obtain back rent from Haber.

Even if ASN overcharged Haber during the period in question, it would not render insufficient Defendants' proffered non-discriminatory reason.[4] Defendants' burden to produce a legitimate, non-discriminatory reason "is one of production, not persuasion; it 'can involve no credibility assessment.'" *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*quoting St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Defendants meet their "minimal burden of proffering a nondiscriminatory reason for their actions," *Wentworth,* 493 F.Supp.2d at 569, as long as their factual assertions, if true, support the non-discriminatory reason. Defendants have clearly met this burden of production here.

Finally, there is no evidence on record creating a genuine issue of material fact as to whether Defendant's proffered reason is pretextual. In order to show pretext at the summary judgment stage, the plaintiff must point to some fact suggesting "the falsity of the explanation" from which "the trier of fact can reasonably infer ... that the [defendant] is dissembling to cover up a discriminatory purpose." *Schnabel,* 232 F.3d at 89. For example, in *Wentworth,* a tenant running a vocal studio out of her apartment sued her landlord under the FHA claiming that the landlord made statements and initiated eviction proceedings against her because of the race of the tenant's students. 493 F.Supp.2d at 560–64. On a motion for summary judgment, the landlord offered as a non-discriminatory reason for her actions the tenant's alleged breach of the lease by running a vocal studio in her apartment. *Id.* at 570. The Court, however, found defendant's reason pretextual because facts showed that "virtually all" the harassment occurred after voice lessons with African–American students. *Id.* In other words, the Court was presented with a fact—the timing of the landlord's harassment—that rendered the proffered non-discriminatory reason less plausible.

However, even viewing the evidence in the light most favorable to Haber and assuming that ASN overcharged Haber, there is still nothing on record to suggest that the defendant's proffered reason is false. Unlike the statements in *Wentworth,* the overcharge could have occurred for many non-discriminatory reasons, such as a mistaken assumption about Haber's

---

4. It may or may not be the case that ASN overcharged Haber before filing the 2010 Petition. For instance, it appears in ASN's financial records that in February 2010 ASN charged Haber a $25 late fee after it did not receive a Section 8 payment from DCHR, even though Haber himself had already paid

his portion of the rent by the first of the month. Defendants maintain that even though ASN directly receives a portion of the rent from DCHR Haber "is still responsible for ensuring the full payment of his rent," (Haller Dec. ¶ 15), but point to no law or lease provision supporting that assertion.

rent responsibilities. An overcharge, on its own, would not allow a rational jury to reasonably infer that Defendants' actions were actually racially motivated. Haber therefore cannot establish that, the filing of the 2010 Petition was discriminatory harassment in violation of §§ 3604(a), 3604(b), or 3617 of the FHA.

### ii. The Uninvited Contractor

■ Haber cannot make a prima facie showing of discrimination with regard to the uninvited contractor, because there is no evidence on record showing that Defendants let the contractor into Haber's apartment without permission because of Haber's race. Nothing on record suggests that, when the contractor was let into Haber's apartment, Haber was being treated differently from tenants of any other race. In fact, Haber himself admitted in his deposition that ASN also allowed contractors to enter the apartments of white tenants without their permission. Haber therefore cannot establish a prima facie case that Defendants' allowing the contractor into his apartment without permission was discriminatory harassment in violation of §§ 3604(a), 3604(b), or 3617 of the FHA.

### 2. The Civil Rights Act of 1866, New York State and New York City Human Rights Law

■ Section 1982, NYSHRL, and NYCHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA.[5] See Fair Hous. Justice Ctr., Inc. v. Broadway Cres-

cent Realty, Inc., No. 10 Civ. 34, 2011 WL 856095, at *9 (S.D.N.Y. Mar. 9, 2011) (stating that NYSHRL and NYCHRL housing discrimination claims are "analyzed under the same standard as claims arising from the [FHA]") (citations omitted); Mitchell v. Century 21 Rustic Realty, 233 F.Supp.2d 418, 437 (E.D.N.Y.2002) ("Housing discrimination claims brought under §§ 1981 and 1982 are analyzed under the McDonnell Douglas Test."). Because, as discussed in Part II.C.1.b, supra, Haber's discriminatory treatment claims under the FHA fail under the McDonnell Douglas test, and because § 1982, the NYSHRL, and the NYCHRL use the same standards as the FHA, Haber's discriminatory treatment claims under these latter provisions must fail as well. Therefore, Defendants are also entitled to summary judgment as to Haber's § 1982, NYSHRL, and NYCHRL claims.

### D. CIVIL CONSPIRACY CLAIM

■ Under New York state law, a plaintiff may claim civil conspiracy alongside an "otherwise actionable tort", and thereby widen the number of defendants liable for that tort. See Alexander & Alexander of N.Y., Inc. v. Fritzen, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) (citations omitted). A "tort," for the purposes of civil conspiracy, includes any "unlawful" act, or a "lawful" act done "in an unlawful manner." Arlinghaus v. Ritenour, 622 F.2d 629, 639 (2d Cir.1980) (citation omitted). See, e.g., Okocha v. HSBC Bank USA, N.A., 700 F.Supp.2d

**5.** The Civil Rights Act of 1866, as codified in Title 42, Section 1982 of the U.S.Code ("§ 1982"), declares that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Section 1982 allows suits against private actors engaged in racial housing discrimination. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The NYSHRL and NYCHRL contain language that is substantively identical to that of §§ 3604(a), 3604(b), and 3617 of the FHA, differing in that the NYSHRL and NYCHRL cover a broader range of protected classes. See N.Y. Exec. Law § 296(2–a), (5)(a); N.Y.C. Admin. Code § 8–107(5)(a).

369, 377–78 (S.D.N.Y.2010) (holding that dismissal of state deceptive business practices claim left "no state-law basis for" civil conspiracy). However, in New York "a mere conspiracy to commit a [tort] is never of itself a cause of action." *Alexander & Alexander,* 68 N.Y.2d at 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (citations omitted) (alteration in original). A plaintiff must therefore "demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Fisk v. Letterman,* 424 F.Supp.2d 670, 677 (S.D.N.Y.2006) (*quoting Treppel v. Biovail Corp.,* No. 03 Civ. 3002, 2004 WL 2339759, at *19 (S.D.N.Y. Oct. 15, 2004)).

▮ Haber alleges that Defendants, specifically Haller and Early, are liable, as co-conspirators, for four underlying acts: (1) "trump[ing] up charges" that Haber's rent was not paid; (2) having Rent Demands affixed on his door; (3) "falsif[ying] documents & statements to try and evict" him; and (4) filing a "false claim" in Housing Court. (*See* Am. Compl. at 6.) However, none of these acts can support a civil conspiracy claim in this action against Haller and Early, for the following reasons.[6]

First, insofar as Haber alleges each of these acts are tortious in that they constitute housing discrimination, his conspiracy claims against Haller and Early cannot withstand summary judgment. None of these four allegedly discriminatory acts can support even a prima face case that Defendants have violated federal, state or city antidiscrimination law. *See* Part II. C.1.b, *supra.* Accordingly, Haber cannot state a civil conspiracy claim in connection with any of the discrimination claims discussed in this opinion.[7]

Second, insofar as Haber alleges that each of these acts are tortious because they violate some federal law other than the FHA and § 1982, his conspiracy claims still cannot withstand summary judgment because, even liberally construed, his complaint cannot fairly be read to bring any other federal claim.

Finally, insofar as Haber alleges each of these acts are tortious because they violate some state or local law other than the NYSHRL and NYCHRL provisions at issue in Part II.C.2, *supra,* any state law violations that cannot, with a liberal construction, be fairly read from his complaint must fail summary judgment for the same reason.[8]

Because Haber fails to make a valid conspiracy claim against Haller and Early, Defendants are also entitled to summary judgment as to the conspiracy claim.

---

**6.** Notwithstanding the reasons below, Haber cannot establish conspiracy with respect to Early as there is no evidence on the record that she agreed to discriminate against Haber in any way, or that she is in any way connected to the events in question.

**7.** In any event, Haller and Early cannot be charged with conspiracy to discriminate by affixing Rent Demands on Haber's door because Haber does not allege in this action that the Rent Demand affixations, which occurred before March 10, 2009, violate his fair housing rights. (*See id.* (alleging discrimination claims for harassment occurring *after* March 10, 2009).)

**8.** Since all of Haber's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over any state law violations and conspiracies to commit those violations that can fairly be read from the complaint. *See* 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction").

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants ASN 50th Street LLC, Linda Early, and Mark Haller for summary judgment is GRANTED.

The Clerk of the Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**